UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| SOUTHCREST, L.L.C., | ) |  |
|---|---|---|
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) |  |
| v. | ) | Case No. 10-CV-0362-CVE-FHM |
|  | ) |  |
| BOVIS LEND LEASE, INC., GOULD | ) |  |
| TURNER GROUP, P.C., and CARLISLE | ) |  |
| SYNTEC, INC., | ) |  |
|  | ) |  |
| **Defendants.** | ) |  |

**OPINION AND ORDER**

Now before the Court are Defendant Gould Turner Group, P.C.'s Motion for Partial Judgment on the Pleadings, and Integrated Brief in Support (Dkt. # 64) and Defendant, Bovis Lend Lease, Inc.'s Joinder in Defendant Gould Turner Group, P.C.'s Motion for Partial Judgment on the Pleadings [Dkt. No. 64] (Dkt. # 65).

**I.**

On or about December 17, 1997, plaintiff Southcrest, L.L.C. (Southcrest) entered into a contract with defendant Bovis Lend Lease, Inc. (Bovis) to build Southcrest Hospital. Dkt. # 2, at 2. Southcrest also entered into a contract with defendant Gould Turner Group, P.C. (Gould) for design and construction administration services. Id. Original construction of the hospital was certified by Gould as substantially complete on March 12, 1999. Id. Southcrest later contracted with Bovis for three additional construction projects, which Gould also certified as complete: a catheter lab addition to the hospital, substantially complete on June 5, 2000; an operating room addition, substantially complete on October 29, 2001; and an addition of the 5th and 6th floors of the hospital tower, substantially complete on July 19, 2002. Id. at 2-3.

All of the buildings were covered in exterior sheathing called Exterior Insulated Finishing System (EIFS). Id. at 3. Plaintiff alleges that, in June 2008, its employees "noticed water damage to the interior of the building" in the operating room addition. Id. at 5. An environmental engineer hired by Southcrest to investigate the moisture intrusion issue discovered "high levels of moisture" inside the wall cavity of the operating room, and repair work revealed that the problem was "more extensive than initially believed." Id. Southcrest claims the damage was caused by defective design and construction of the 5th and 6th floor additions, which allegedly "allowed large volumes of water to enter the exterior wall cavity" that then wicked into permeable surfaces and flowed down the building. Id. As a result, plaintiff claims, "all permeable surfaces in the hospital tower" were eventually saturated, and water entering the building began to collect in a ground floor wall. Id. The catheter lab and operating room additions allegedly had the same problems as the 5th and 6th floors, and both have "extensive moisture intrusion and water damage." Id. at 6. Plaintiff claims that the moisture intrusion and water damage in the building was caused by defective construction and design of the EIFS exterior, and that water intrusion was also caused by defective manufacture and design of the roofing system by Carlisle Syntec, Inc. (Carlisle). Id.

Plaintiff sought damages for the defects in the building based on negligence and breach of contract by both Bovis and Gould, breach of implied warranty for particular purpose by Bovis, and breach of express warranty by Carlisle. Id. at 7-10. The Court dismissed as untimely the claims for breach of contract against Gould and Bovis, as well as the breach of implied warranty claim against Bovis. Dkt. # 63. Gould and Bovis now move for partial judgment on the pleadings as to plaintiff's negligence claims against them based on the original hospital construction, which they claim are barred by the applicable statute of repose, OKLA. STAT. tit. 12 § 109. Dkt. ## 64, 65.

2

**II.**

Gould and Bovis seek partial judgment on the pleadings as to plaintiff's negligence claims relating to the construction of the original hospital. Plaintiff asserts that it "does not bring any claims in this civil action which arise from the construction of the original hospital building," and that defendants' motion is therefore moot. Dkt. # 68, at 2.

Plaintiff's argument that its claims are not based on construction of the original hospital building is unsupported by its complaint. The statement of facts in the complaint begins with a discussion of relevant dates regarding the original construction. Dkt. # 2, at 3-4. After stating facts about the original construction and construction of the additions, the complaint goes on to list a number of ways in which "construction of the Southcrest hospital was defective," without distinguishing between construction of the original hospital building and that of the additions. Id. at 4-5. Plaintiff's claim for negligence states that "Bovis had a duty to construct the hospital and all additions in a workmanlike manner free from material defects," and that Bovis breached that duty. Further, the complaint states that "Gould owed Southcrest a duty to design the hospital and additions in a manner free from material defects" and "to properly administer and oversee the construction of the Southcrest Hospital and all additions to assure that the hospital was constructed in a workmanlike manner, free from material defects," and that Gould breached its duties because it "provided a defective design for the hospital and all additions, and . . . failed to perform its construction administration functions." Id. at 7.

The most logical reading of the complaint is that construction of the original hospital formed part of the basis for plaintiff's claims. Plaintiff explains its mention of the original construction in

the complaint by stating that although the alleged structural damage has now spread throughout the entire hospital, the defective design and construction of the additions is what caused the damage and forms the basis of its claims. Dkt. # 68, at 2. The Tenth Circuit has not addressed the specific question of whether a party ought to be given the opportunity to moot its own claims by advancing a favorable interpretation of the complaint. However, it has not considered itself bound by plaintiffs' interpretations of their claims, but will look instead to the plain language of a complaint in assessing the nature of the claims at issue. E.g., Stillman v. Devita, 120 F. App'x 272, 275 (10th Cir. 2005)(unpublished)[1]. Moreover, in the context of Federal Rule of Civil Procedure 41(a)(2), which addresses cases where an action may be dismissed at the plaintiff's request, the Tenth Circuit has noted that "a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice." Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 359 (10th Cir. 1996). Here, the most reasonable interpretation of the complaint is that it states claims regarding the original construction of the hospital, and there appears to be no valid reason to torture the reading of the complaint so as to allow plaintiff to avoid the current motion for judgment on the pleadings. Therefore, defendants' motions will not be dismissed as moot.

## III.

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Nelson v. State Farm Mut. Auto Ins. Co., 419 F.3d 1117, 1119 (10th

---

[1] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

4

Cir. 2005). Thus, a court must "accept all the well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." Id. (internal quotation marks and citation omitted); Ramirez v. Dept. of Corr., State of Colo., 222 F.3d 1238, 1241 (10th Cir. 2000). To survive judgment, a "complaint must contain enough facts to state a claim to relief that is plausible on its face." Anderson v. Suiters, 499 F.3d 1228, 1232 (10th Cir. 2007) (internal quotation marks and citation omitted). "Judgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). Fed. R. Civ. P. 12(d) further provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Hence, under Rule 12(c), a court should consider only matters in the pleadings or incorporated by reference in, or attached to, the answer or complaint. Park Univ. Enters., Inc., 442 F.3d at 1244; GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384-85 (10th Cir. 1997).

Gould and Bovis ask the Court to grant partial judgment on the pleadings as to plaintiff's negligence claims regarding construction of the original hospital on the ground that the claims are barred by the applicable statute of repose, OKLA. STAT. tit. 12 § 109. In this diversity action, this Court must apply Oklahoma law in deciding whether Southcrest's claims are time-barred. See State Farm Mut. Auto Ins. Co. v. Boellstorff, 540 F.3d 1223, 1228 (10th Cir. 2008). Statutes of repose are legislative fixes to the tolling of statutory deadlines by courts, and set "an outer boundary in time beyond which no cause of action may arise for conduct that would otherwise have been actionable."

5

Jaworsky v. Frolich, 850 P.2d 1052, 1054-55 (Okla. 1992). Such statutes are not tollable, and their time limits "must be allowed to run and expire uninterrupted by any arrest or suspension." Kirby v. Jean's Plumbing Heat & Air, 222 P.3d 21, 26 (Okla. 2009). Section 109, which applies to negligence claims regarding construction, states:

> No action in tort to recover damages (1) for any deficiency in the design, planning, supervision, or observation of construction or construction of an improvement to real property [or] for injury to property, real or personal, arising out of any such deficiency . . . shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement.

Both parties appear to assume that any claims regarding the original construction are wholly separate from claims based on the three additions, and that it is therefore the date of substantial completion of the original construction that is relevant for defendants' motions. The Oklahoma Supreme Court has not ruled directly on what date of completion is relevant where original construction is followed by several additions to a building. However, it has decided the related question of what date governs a statute of limitations inquiry where various parts of a construction project are governed by separate agreements. See Samuel Roberts Noble Found., Inc. v. Vick, 840 P.2d 619 (Okla. 1992). In Vick, the plaintiff brought a claim against an engineer who performed work in connection with the construction of a new building. Id. at 621. The defendant argued that the plaintiff's claims against him were barred by the statute of limitations, and the plaintiff responded by stating that the defendant's contract was part of the general construction contract, and that the limitations period should be measured from the date construction was completed. Id. at 622. The court agreed that the limitations period for a subcontract runs from the time the overall contract is completed, not when each subcontract is finished. Id. at 622-23. However, it found that the defendant's work was

governed by a separate agreement and was not "under the supervision or direction of the general construction contract." Id. at 623. The court decided that it would not "combine the two separate contracts for limitations purposes," as "[s]uch a combination would judicially extend the limitations period [for the defendant's contract] beyond that which is statutorily allowed." Id. at 623. Therefore, the appropriate date from which to measure the statutory limitations period was the date of the completion of the defendant's separate work. Id.

The Vick court's reasoning regarding the need to assess each contract individually for purposes of a limitations period dictates the same approach in this case. Here, plaintiff entered into separate contracts with both Bovis and Gould for the original construction, Dkt. # 2, at 13, 103, the construction of the catheter lab addition, Dkt. ## 2, at 130; 2-1, at 2, the construction of the operating room addition, Dkt. #2-1, at 28[2], and the construction of the fifth and sixth floor additions, Dkt. ## 2-1, at 29; 2-2, at 29. The additions were not subcontracts of the contract for the original construction, nor is there language in the original contract that references the three additions eventually constructed. Because the original construction was governed by its own contract, separate and distinct from those governing the additions that followed, it may be considered separately from the additions. Such an approach comports with the rationale behind § 109, which serves to "protect[] builders from tort liability that otherwise might extend for an uncertain length of time after the completion of a contract." Kirby, 222 P.3d at 27-28. The original construction of the hospital constitutes an "improvement to real property" for purposes of § 109, as it was an "addition to property which amounts to more than normal repairs, replacement, maintenance or

---

[2] Although plaintiff's complaint identifies the contract between itself and Bovis for construction of the operating room addition as Exhibit E, that contract was not attached to the complaint. The only contract attached regarding the operating room addition was between Southcrest and Gould. Dkt. # 2-1, at 28.

7

upkeep," and a "permanent installation or fixture upon real property." Id. at 24, 27 (deriving definition of "improvement to real property" from the ad valorem tax code, OKLA. STAT. tit. 68, §§ 2801, 2806). Thus, the ten-year period of repose will be measured from the date of substantial completion of the original construction.

Construction of the original hospital building was certified as substantially complete on March 12, 1999. Dkt. # 2, at 2. Plaintiff's complaint was filed June 4, 2010, more than ten years later. Id. at 1. Therefore, plaintiff's negligence claims based on original construction of the hospital are barred by the statute of repose. No material issue of fact remains regarding this issue, and Bovis and Gould are therefore entitled to judgment as a matter of law on the negligence claims as to the original construction.

**IT IS THEREFORE ORDERED** that Gould Turner Group, P.C.'s Motion for Partial Judgment on the Pleadings, and Integrated Brief in Support (Dkt. # 64) and Defendant, Bovis Lend Lease, Inc.'s Joinder in Defendant Gould Turner Group, P.C.'s Motion for Partial Judgment on the Pleadings [Dkt. No. 64] (Dkt. # 65) are **granted**. Gould and Bovis are entitled to judgment on Southcrest's negligence claims based on the construction of the original hospital.

**DATED** this 7th day of February, 2011.

                                                                                           CLAIRE V. EAGAN, CHIEF JUDGE
                                                                                           UNITED STATES DISTRICT COURT