# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SOUTHCREST, L.L.C., | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 10-CV-0362-CVE-FHM |
| | ) |
| BOVIS LEND LEASE, INC., GOULD | ) |
| TURNER GROUP, P.C., and CARLISLE | ) |
| SYNTEC, INC., | ) |
| | ) |
|        **Defendants.** | ) |

## OPINION AND ORDER

Now before the Court is defendant Bovis Lend Lease, Inc. (Bovis)'s Motion for Leave to File Third-Party Complaint (Dkt. # 82). Bovis requests leave to file a third-party complaint against "the subcontractors and suppliers who provided the labor, material or services during construction" of Southcrest Hospital "under theories of contractual indemnity, common law contribution and/or common law implied indemnity." Dkt. # 82, at 2. The motion is not opposed by plaintiff or the two other defendants.

On or about December 17, 1997, plaintiff Southcrest, L.L.C. (Southcrest) entered into a contract with Bovis to build Southcrest Hospital. Dkt. # 2, at 2. Southcrest also entered into a contract with defendant Gould Turner Group, P.C. (Gould) for design and construction administration services. Id. Original construction of the hospital was certified by Gould as substantially complete on March 12, 1999. Id. Southcrest later contracted with Bovis for three additional construction projects, which Gould also certified as complete: a catheter lab addition to the hospital, substantially complete on June 5, 2000; an operating room addition, substantially

complete on October 29, 2001; and an addition of the 5th and 6th floors of the hospital tower, substantially complete on July 19, 2002. Id. at 2-3.

All of the buildings were covered in exterior sheathing called Exterior Insulated Finishing System (EIFS). Id. at 3. Plaintiff alleges that, in June 2008, its employees "noticed water damage to the interior of the building" in the operating room addition. Id. at 5. An environmental engineer hired by Southcrest to investigate the moisture intrusion issue discovered "high levels of moisture" inside the wall cavity of the operating room, and repair work revealed that the problem was "more extensive than initially believed." Id. Southcrest claims the damage was caused by defective design and construction of the 5th and 6th floor additions, which allegedly "allowed large volumes of water to enter the exterior wall cavity" that then wicked into permeable surfaces and flowed down the building. Id. As a result, plaintiff claims, "all permeable surfaces in the hospital tower" were eventually saturated, and water entering the building began to collect in a ground floor wall. Id. The catheter lab and operating room additions allegedly had the same problems as the 5th and 6th floors, and both have "extensive moisture intrusion and water damage." Id. at 6. Plaintiff claims that the moisture intrusion and water damage in the building was caused by defective construction and design of the EIFS exterior, and that water intrusion was also caused by defective manufacture and design of the roofing system by Carlisle Syntec, Inc. (Carlisle). Id.

Plaintiff initially sought damages for the defects in the building based on negligence and breach of contract by both Bovis and Gould, breach of implied warranty for particular purpose by Bovis, and breach of express warranty by Carlisle. Id. at 7-10. The Court dismissed as untimely the claims for breach of contract against Gould and Bovis, as well as the breach of implied warranty claim against Bovis. Dkt. # 63. The Court also granted partial judgment on the pleadings in favor

2

of Gould and Bovis as to plaintiff's negligence claims based on the original hospital construction. Dkt. # 77. Following the partial grant of judgment on the pleadings, Bovis moved for leave to file a third-party complaint.

Pursuant to Fed. R. Civ. P. 14(a), a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Where, as here, the third-party complaint would be filed more than fourteen days after service of the third-party plaintiff's original answer, permission from the Court is required to file the complaint. Fed. R. Civ. P. 14(a). "Rule 14's provision for impleading parties is narrow," and "the third-party claim must be derivative of the original claim." King Fisher Marine Serv., Inc. v. 21st Phoenix Corp., 893 F.2d 1155, 1158 (10th Cir. 1990). "A court has ancillary jurisdiction of a defendant's proper [R]ule 14(a) claim against a third-party defendant without regard to whether there is an independent basis of jurisdiction, so long as the court has jurisdiction of the main claim between the original parties." Id. at 1161.

Bovis seeks to assert claims against third parties for their part in the construction work that allegedly led to the damage to the hospital at issue in plaintiff's complaint. If Bovis is found liable for plaintiff's remaining negligence claims based on its construction of the hospital additions, third parties involved in that construction could then be liable to Bovis under theories of contribution or indemnity. See Thomas v. E-Z Mart Stores, Inc., 102 P.3d 133, 140 (Okla. 2004); OKLA. STAT. tit. 12, § 832. Therefore, Bovis's third-party complaint would serve the goal of Rule 14 "to accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits." Hefley v. Textron, Inc., 713 F.2d 1487, 1498 (10th Cir. 1983). Thus, this case is well-suited to a third-party complaint, and

no party has objected to Bovis's motion.  Because Bovis seeks to assert proper Rule 14(a) claims, the Court has ancillary jurisdiction over Bovis's claims against the third-party defendants.  Bovis is therefore given leave to file its proposed third-party complaint.

**IT IS THEREFORE ORDERED** that the Motion for Leave to File Third-Party Complaint (Dkt. # 82) is **granted**.  Defendant shall file its third-party complaint forthwith.

**DATED** this 16th day of March, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT