# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

SOUTHCREST, L.L.C., )
        Plaintiff, )
v. )
BOVIS LEND LEASE, INC., and DELTA )
UNITED SPECIALTIES, INC., )
        Defendants. )
_____ )
BOVIS LEND LEASE, INC., )
        Third Party Plaintiff, )
v. )
ABG CAULKING CONTRACTORS, INC., )
APAX GLASS, INC., )
DELTA/UNITED SPECIALTIES, )
GREEN COUNTY INTERIORS, INC., )
NORTHEASTERN IRRIGATION & )   Case No. 10-CV-0362-CVE-FHM
LANDSCAPE, INC., )
PROFESSIONAL WATERPROOFING )
AND ROOFING, INC., )
RUSSELL PLUMBING HEAT & AIR )
COMPANY D/B/A RUSSELL MECHANICAL )
CONTRACTORS, STO CORP., )
SUPREME SYSTEMS, INC., and )
WESTERN FIREPROOFING COMPANY )
OF KANSAS, INC., and )
CARLISLE SYNTEC, INC., )
        Third Party Defendants, )
_____ )
DELTA/UNITED SPECIALTIES, )
        Fourth-Party Plaintiff, )
v. )
SOUTHERN PLASTERING, INC., )
        Fourth-Party Defendant. )

## OPINION AND ORDER

Now before the Court is plaintiff Southcrest L.L.C. (Southcrest) and third party defendant Apax Glass, Inc.'s (Apax) joint Motion for Finding of Good Faith Settlement (Dkt. # 455). Fourth party defendant Southern Plastering, Inc. (Southern Plastering) has filed a response in opposition to the motion (Dkt. # 460).

**I.**

On or about December 17, 1997, Southcrest entered into a contract with defendant/third party plaintiff Bovis Lend Lease, Inc. (Bovis) for the construction of Southcrest Hospital. Dkt. # 190 at 3. The construction of the original hospital was completed on March 12, 1999. Id. Between 1999 and 2001, Southcrest contracted with Bovis for the construction of three additions to the hospital: a catheter lab, an operating room, and the 5th and 6th floors of the hospital tower. Id. Bovis acted as the general contractor on these projects (Dkt. # 90 at 3). Apax installed the windows in the 5th and 6th floor additions. Id. at 4. Southcrest alleges that due to "particularly poor construction and serious design flaws" the hospital additions have succumbed to "extensive moisture intrusion and water damage." Dkt. # 190 at 13-14.

Southcrest filed its initial complaint on June 4, 2010 against Bovis, Gould Turner Group, P.C. (Gould)[1] and Carlisle Syntec, Inc (Carlisle). Dkt. # 2. The Court then granted in part plaintiff's motion to file an amended complaint, which added detail regarding plaintiff's negligence claims, an alternative theory of liability based on fraud, a claim against Delta United Specialties (Delta), and a request for punitive damages. Dkt. # 190. The amended complaint also omitted plaintiff's claims against Carlisle, and Carlisle was dismissed as a defendant. Dkt. # 174. Rather than allege defects in the roofing system, the amended complaint focuses on alleged defects in the construction of the hospital additions and defects in the design and installation of the moisture insulation system. The first amended complaint alleges that plaintiff's damages are in excess of $10,000,000.

---

[1] Gould and Southcrest have reached a settlement and all claims against Gould have been dismissed. See Dkt. # 253.

The Court also granted Bovis leave to file a third-party complaint, which Bovis then filed against ABG Caulking Contractors, Inc. (ABG), Apax, Delta, Green Country Interiors, Inc., Northeastern Irrigation & Landscape, Inc., Professional Waterproofing and Roofing, Inc., Russell Plumbing Heat & Air Company, Sto Corp., Supreme Systems, Inc., and Western Fireproofing Company of Kansas, Inc. Dkt. # 90. After Southcrest's claims against Carlisle were voluntarily dismissed, Bovis filed an amended third-party complaint adding Carlisle as a third-party defendant. Dkt. # 184. Delta has also filed a fourth-party complaint against Southern Plastering. Dkt. # 182. Bovis' third-party complaint against Apax alleges that Bovis is entitled to contribution and/or common law indemnification from Apax as a joint tortfeasor.[2]

Southcrest and Apax have now reached a settlement wherein, in exchange for $50,000 from Apax, Southcrest has executed a "Settlement Agreement and Release" releasing Apax of all liabilities relating to this litigation. Dkt. # 455-1. Southcrest and Apax seek an order finding that the settlement was reached in good faith, thus extinguishing any claims of contribution or indemnification against Apax pursuant to OKLA. STAT. tit. 12, § 832(H). Southern Plastering contends that the settlement was not in good faith and should not bar any contribution claims.

---

[2] Bovis' amended third-party complaint states that it was filed for the "sole purpose" of adding allegations against Carlisle and that "Bovis does not intend to in any way amend or otherwise alter its allegations against the ten Third Party Defendants named in its March 17, 2011 Third Party Complaint, Dkt. 90." Dkt. # 184 at 2. Thus, despite the filing of the amended third-party complaint, the initial third-party complaint (Dkt. # 90) contains the operative substantive allegations against the initial ten third-party defendants, including Apax.

3

## II.

Oklahoma has adopted the Uniform Contribution Among Tortfeasors Act (UCATA), codified at OKLA. STAT. tit. 12, § 832, which provides in pertinent part:

> When a release, covenant not to sue, or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death: . . . 2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

OKLA. STAT. tit. 12, § 832(H). Oklahoma courts have not articulated the test to be used in evaluating whether a settlement was reached "in good faith." As such, the Court looks to the policy considerations as well as other courts' interpretations of the UCATA. See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir. 2001) ("When no decision of a state's highest court has addressed an issue of that state's law, the federal court confronted with that issue must predict how the State's highest court would rule. In doing so, the federal court is free to consider all resources available, including decisions of [applicable state] courts, other state courts and federal courts, in addition to the general weight and trend of authority.") (internal quotations omitted). The policy considerations behind the contribution bar of the UCATA are to encourage settlement and achieve equitable sharing of costs among parties at fault. Dacotah Marketing and Research, L.L.C. v. Versatility, Inc., 21 F. Supp. 2d 570, 575 & nn. 9-10 (E.D.Va. 1998); Johnson v. United Airlines, 784 N.E.2d 812, 821 (Ill. 2003) (The UCATA "seeks to promote two important public policies - the encouragement of settlements and the equitable apportionment of damages among tortfeasors."); Uniform Contribution Among Tortfeasors Act § 4 (1955 Revised Act), Commissioners' Comment. Courts have generally applied one of three different tests in evaluating whether a settlement is in

good faith and bars contribution claims: the "reasonable range" test, the "noncollusive conduct" test and the "totality of the circumstances" test.

The "reasonable range" test focuses on "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability." Tech-Bilt, Inc. v. Woodward-Clyde & Assoc., 698 P.2d 159, 166 (Cal.1985). The assessment is made on the basis of information available to the settling parties at the time of settlement. Id. at 167. A "settlement within this 'reasonable range' meets the 'good faith' requirement, while a settlement that releases a tortfeasor from all claims in exchange for an amount far less than the tortfeasor's proportional liability would likely fail the 'good faith' test." Dacotah, 21 F. Supp. 2d at 576.[3]

The "noncollusive conduct" test limits a good faith determination to a procedural inquiry as to the absence of collusion between the settling parties. Copper Mountain, Inc. v. Poma of America, Inc., 890 P.2d 100, 106-07 (Colo. 1995). This test requires the party challenging the settlement to prove a lack of good faith by showing that the settling parties entered into the settlement with the "intent to injure" the interests of the non-settling parties. Id. at 108. The "noncollusive conduct" test assumes that

> the interests of the non-settling tortfeasors are adequately protected if the settlement is a non-collusive arm's length transaction. In arm's length negotiations, plaintiffs attempt to obtain as much as possible and defendants seek to pay as little as possible. A plaintiff's self-interest makes it unlikely that plaintiff will settle with any single tortfeasor for an unreasonably low amount, which in turn tends to prevent significantly inequitable allocations of financial liability among tortfeasors.

---

[3] The Dacotah court noted, however, that courts applying the "reasonable range" test have not automatically found bad faith when the amount of settlement is less than the settling party's proportionate share. Dacotah, 21 F. Supp. 2d at 577.

Id.; Noyes v. Raymond, 548 N.E.2d 196, 199 (Mass. App. Ct. 1990) (lack of good faith "includes collusion, fraud, dishonesty, and other wrongful conduct," but circumstance of low settlement amount in comparison to plaintiff's estimate of damages by itself is "not material").

The last approach commits to the court's discretion a determination of good faith in light of the "totality of the circumstances." Mahathiraj v. Columbia Gas of Ohio, Inc., 617 N.E.2d 737, 741-42 (Ohio Ct. App. 1992); Brooks v. Wal-Mart Stores, Inc., 535 So.2d 55, 61 (N.C. Ct. App. 2000); Johnson, 784 N.E.2d at 825. While the court may consider the proportionate liability of the settling party to the non-settling party where appropriate, the court is not required "to consider it in every case or in cases where such calculations would be of little value in good faith determinations." Mahathiraj, 617 N.E.2d at 742.

> [C]ourts may consider the proportion and amount of liability the settling and nonsettling parties might respectively bear at trial, but are not specifically required to make proportionate liability calculations. Other factors courts may consider include, but are not limited to, whether the challenging party has demonstrated evidence indicating collusion, fraud or other tortious or wrongful conduct on the part of the settling parties.

Id. at 742; Brooks, 535 N.E.2d at 62 ("[A] trial court may, without being specifically obligated to do so, consider any of the factors delineated in Tech-Bilt, or examine whether the settlement was collusive as required by the second approach if such inquiry is warranted by the facts of the individual case. However, mandating that the court perform the foregoing functions in every case would indisputably be disruptive of, and discouraging to, settlement.").

The Court is persuaded that Oklahoma courts would adopt the "totality of the circumstances" test in determining good faith under § 832(H)(2). This approach appears to be the favored interpretation of the UCATA and, in this Court's view, provides the maximum flexibility for fact-specific "good faith" determinations. The Court has reviewed the few decisions of Oklahoma courts

6

addressing good faith under § 832(H) and finds that the totality of the circumstances test is in keeping with those decisions. See, e.g., Dutsch v. Sea Ray Boats, Inc., 845 P.2d 187 (Okla. 1992) (holding that settlement was in good faith where non-settling party "presented no evidence to support its bald assertion of bad faith and collusion"). Accordingly, the Court will consider the "totality of the circumstances" in determining whether the settlement between plaintiff and Apax was made in good faith.

The Court must also address the applicable burden of proof. Plaintiff and Apax bear the initial burden of showing good faith which, at a minimum, requires that they prove the existence of a legally valid settlement agreement, including proof of consideration given and received. Johnson, 784 N.E.2d at 819. Once the settling parties establish this prima facie evidence of validity, there is a presumption that the settlement is made in good faith. Id. The burden then shifts to Southern Plastering to establish that, under the totality of the circumstances, the settlement was not made in good faith. Id.; Barmat v. John and Jane Doe Partners A-D, 797 P.2d 1223, 1227 (Ariz. Ct. App. 1990) ("Once the settling party introduces proof of the settlement and the amount thereof, the burden shifts to the party challenging the settlement to 'show that the amount paid by the claimant in settlement was not paid in good faith.'"). Courts disagree as to the standard of proof the non-settling parties must meet to show absence of good faith; some have required them to show the absence of good faith by clear and convincing evidence and others by a preponderance of the evidence. Compare Johnson, 784 N.E.2d at 819-21 (preponderance standard), with Dacotah, 21 F.Supp.2d at 578 n.21 (clear and convincing standard). In this case, the Court finds it does not have to reach this issue because Southern Plastering has not shown an absence of good faith under either standard.

7

**III.**

Southern Plastering argues that the settlement was not made in good faith because the settlement amount is "no more than nuisance value, when that amount is compared to the total damages sought by SouthCrest." Dkt. # 460 at 3. Southern Plastering asserts that this is particularly troubling because "Apax is likely to be a party that is primarily responsible" for the damage to the hospital." Id. However, the proportional share analysis is not particularly helpful in this case. There were at one time fourteen defendants and third-party defendants involved in this case.[4]

Given the large number of parties that participated in the construction of the hospital additions, it is entirely possible that Apax's proportionate liability would be significantly less than Southcrest's total damages. In support of its position that Apax's window installation was the primary cause of plaintiff's damages, Southern Plastering cites statements of Southcrest's expert and Southern Plastering's expert. Southcrest's expert merely stated that "defective installation of the windows . . . contributed" to the damage and does not support a finding that Apax was primarily responsible for the damage. Dkt. # 460-2 at 2. Southern Plastering's expert does state that the "most significant performance problem with the 6th floor wall system is water intrusion at the aluminum windows." Dkt. # 460-3 at 2. However, the expert report does not state that Apax was solely responsible for the work that allowed the water intrusion at the windows. In fact, the report specifically notes that Bovis and ABG also played a role in the approval and/or installation of

---

[4] This does not include an additional party that Southcrest initially sought to add as a defendant in the first amended complaint, but withdrew because its presence would destroy diversity. Dkt. # 170.

8

sealant on the windows. Id. at 3. Southern Plastering has not submitted evidence that conclusively establishes that Apax's window installation was the primary cause of Southcrest's damages.

Given the totality of the circumstances, the amount of the settlement between Southcrest and Apax does not suggest an absence of good faith. Southern Plastering has not made any allegations of collusion, fraud, or other tortious or wrongful conduct that could support a finding that the settlement was not in good faith. As such, Southern Plastering has not carried its burden to prove the settlement was not reached in good faith.

Because the settlement between Southcrest and Apax was reached in good faith, Apax is entitled to protection against contribution and indemnification claims from any alleged joint tortfeasor pursuant to OKLA. STAT. tit. 12, § 832(H).

**IT IS THEREFORE ORDERED** that the Motion for Finding of Good Faith Settlement (Dkt. # 455) is **granted**. Apax will not be subject to any contribution or indemnification claims by an alleged joint tortfeasor.

**DATED** this 19th day of July, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE