## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SOUTHCREST, L.L.C., | ) |
|       Plaintiff, | ) |
| v. | ) |
| BOVIS LEND LEASE, INC., and | ) |
| DELTA/UNITED SPECIALTIES, INC., | ) |
|       Defendants. | ) |
| _____ | ) |
| BOVIS LEND LEASE, INC., | ) |
|       Third Party Plaintiff, | ) |
| v. | ) |
| DELTA/UNITED SPECIALTIES, | ) |
| GREEN COUNTRY INTERIORS, INC., | ) |
| PROFESSIONAL WATERPROOFING | ) |
| AND ROOFING, INC., RUSSELL PLUMBING | ) |
| HEAT & AIR COMPANY D/B/A RUSSELL | ) |
| MECHANICAL CONTRACTORS, and | ) |
| SUPREME SYSTEMS, INC., | )    Case No. 10-CV-0362-CVE-FHM |
|       Third Party Defendants, | ) |
| _____ | ) |
| DELTA/UNITED SPECIALTIES, | ) |
|       Fourth-Party Plaintiff, | ) |
| v. | ) |
| SOUTHERN PLASTERING, INC., | ) |
|       Fourth-Party Defendant. | ) |

## OPINION AND ORDER

Now before the Court is third-party defendant Supreme Systems, Inc.'s (Supreme) Motion for Finding of Good Faith Settlement (Dkt. # 473). No party has filed a response to the motion and the time to do so has passed.

On or about December 17, 1997, Southcrest, L.L.C. (Southcrest) entered into a contract with defendant/third-party plaintiff Bovis Lend Lease, Inc. (Bovis) for the construction of Southcrest Hospital. Dkt. # 190 at 3. The construction of the original hospital was completed on March 12, 1999. Id. Between 1999 and 2001, Southcrest contracted with Bovis for the construction of three additions to the hospital: a catheter lab, an operating room, and the 5th and 6th floors of the hospital

tower.  Id.  Bovis acted as the general contractor on these projects (Dkt. # 90 at 3).  Supreme

installed the roofing material in the operating room addition and the 5th and 6th floor additions.  Id.

at 4.  Southcrest alleges that due to "particularly poor construction and serious design flaws" the

hospital additions have succumbed to "extensive moisture intrusion and water damage."  Dkt. # 190

at 13-14.

Southcrest filed its initial complaint on June 4, 2010 against Bovis, Gould Turner Group,

P.C. (Gould)[1] and Carlisle Syntec, Inc (Carlisle).  Dkt. # 2.  The Court then granted in part plaintiff's

motion to file an amended complaint, which added detail regarding plaintiff's negligence claims,

an alternative theory of liability based on fraud, a claim against Delta United Specialties (Delta), and

a request for punitive damages.  Dkt. # 190.  The amended complaint also omitted plaintiff's claims

against Carlisle, and Carlisle was dismissed as a defendant.  Dkt. # 174.  Rather than allege defects

in the roofing system, the amended complaint focuses on alleged defects in the construction of the

hospital additions and defects in the design and installation of the moisture insulation system.  The

first amended complaint alleges that plaintiff's damages are in excess of $10,000,000.

The Court also granted Bovis leave to file a third-party complaint, which Bovis then filed

against ABG Caulking Contractors, Inc., Apax Glass, Inc., Delta, Green Country Interiors, Inc.,

Northeastern Irrigation & Landscape, Inc., Professional Waterproofing and Roofing, Inc., Russell

Plumbing Heat & Air Company, Sto Corp., Supreme, and Western Fireproofing Company of

Kansas, Inc. Dkt. # 90.  After Southcrest's claims against Carlisle were voluntarily dismissed, Bovis

filed an amended third-party complaint adding Carlisle as a third-party defendant.  Dkt. # 184.  Delta

---

[1]     Gould and Southcrest have reached a settlement and all claims against Gould have been
dismissed.  See Dkt. # 253.

has also filed a fourth-party complaint against Southern Plastering, Inc.  Dkt. # 182.  Bovis' third-party complaint against Supreme alleges that Bovis is entitled to contribution and/or indemnification from Supreme as a joint tortfeaser.[2]

Southcrest and Supreme have now reached a settlement wherein, in exchange for $20,000 from Supreme, Southcrest has executed a "Settlement Agreement and Release" releasing Supreme of all liabilities relating to this litigation.  Dkt. # 473-1.  Supreme seeks an order finding that the settlement was reached in good faith, thus extinguishing any claims of contribution or indemnification against Apax pursuant to OKLA. STAT. tit. 12, § 832(H).

Oklahoma has adopted the Uniform Contribution Among Tortfeasors Act (UCATA), codified at OKLA. STAT. tit. 12, § 832, which provides in pertinent part:

> When a release, covenant not to sue, or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death: . . . 2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

OKLA. STAT. tit. 12, § 832(H).  Oklahoma courts have not articulated the test to be used in evaluating whether a settlement was reached "in good faith."  As such, the Court looks to the policy considerations as well as other courts' interpretations of the UCATA.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir. 2001) ("When no decision of a state's highest court has addressed an issue of that state's law, the federal court confronted with that issue must predict how

---

[2]     Bovis' amended third-party complaint states that it was filed for the "sole purpose" of adding allegations against Carlisle and that "Bovis does not intend to in any way amend or otherwise alter its allegations against the ten Third Party Defendants named in its March 17, 2011 Third Party Complaint, Dkt. 90."  Dkt. # 184 at 2.  Thus, despite the filing of the amended third-party complaint, the initial third-party complaint (Dkt. # 90) contains the operative substantive allegations against the initial ten third-party defendants, including Supreme.

the State's highest court would rule.  In doing so, the federal court is free to consider all resources available, including decisions of [applicable state] courts, other state courts and federal courts, in addition to the general weight and trend of authority.") (internal quotations omitted).  The policy considerations behind the contribution bar of the UCATA are to encourage settlement and achieve equitable sharing of costs among parties at fault.  Dacotah Marketing and Research, L.L.C. v. Versatility, Inc., 21 F. Supp. 2d 570, 575 & nn. 9-10 (E.D.Va. 1998);  Johnson v. United Airlines, 784 N.E.2d 812, 821 (Ill. 2003) (The UCATA "seeks to promote two important public policies - the encouragement of settlements and the equitable apportionment of damages among tortfeasors."); Uniform Contribution Among Tortfeasors Act § 4 (1955 Revised Act), Commissioners' Comment. Courts have generally applied one of three different tests in evaluating whether a settlement is in good faith and bars contribution claims:  the "reasonable range" test, the "noncollusive conduct" test and the "totality of the circumstances" test.

The "reasonable range" test focuses on "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability." Tech-Bilt, Inc. v. Woodward-Clyde & Assoc., 698 P.2d 159, 166 (Cal.1985).  The assessment is made on the basis of information available to the settling parties at the time of settlement.  Id. at 167.  A "settlement within this 'reasonable range' meets the 'good faith' requirement, while a settlement that releases a tortfeasor from all claims in exchange for an amount far less than the tortfeasor's proportional liability would likely fail the 'good faith' test." Dacotah, 21 F. Supp. 2d at 576.[3]

---

[3]     The Dacotah court noted, however, that courts applying the "reasonable range" test have not automatically found bad faith when the amount of settlement is less than the settling party's proportionate share. Dacotah, 21 F. Supp. 2d at 577.

4

The "noncollusive conduct" test limits a good faith determination to a procedural inquiry as to the absence of collusion between the settling parties. Copper Mountain, Inc. v. Poma of America, Inc., 890 P.2d 100, 106-07 (Colo. 1995). This test requires the party challenging the settlement to prove a lack of good faith by showing that the settling parties entered into the settlement with the "intent to injure" the interests of the non-settling parties. Id. at 108. The "noncollusive conduct" test assumes that

> the interests of the non-settling tortfeasors are adequately protected if the settlement is a non-collusive arm's length transaction. In arm's length negotiations, plaintiffs attempt to obtain as much as possible and defendants seek to pay as little as possible. A plaintiff's self-interest makes it unlikely that plaintiff will settle with any single tortfeasor for an unreasonably low amount, which in turn tends to prevent significantly inequitable allocations of financial liability among tortfeasors.

Id.; Noyes v. Raymond, 548 N.E.2d 196, 199 (Mass. App. Ct. 1990) (lack of good faith "includes collusion, fraud, dishonesty, and other wrongful conduct," but circumstance of low settlement amount in comparison to plaintiff's estimate of damages by itself is "not material").

The last approach commits to the court's discretion a determination of good faith in light of the "totality of the circumstances." Mahathiraj v. Columbia Gas of Ohio, Inc., 617 N.E.2d 737, 741-42 (Ohio Ct. App. 1992); Brooks v. Wal-Mart Stores, Inc., 535 So.2d 55, 61 (N.C. Ct. App. 2000); Johnson, 784 N.E.2d at 825. While the court may consider the proportionate liability of the settling party to the non-settling party where appropriate, the court is not required "to consider it in every case or in cases where such calculations would be of little value in good faith determinations." Mahathiraj, 617 N.E.2d at 742.

> [C]ourts may consider the proportion and amount of liability the settling and nonsettling parties might respectively bear at trial, but are not specifically required to make proportionate liability calculations. Other factors courts may consider include, but are not limited to, whether the challenging party has demonstrated

5

evidence indicating collusion, fraud or other tortious or wrongful conduct on the part
of the settling parties.

Id. at 742; Brooks, 535 N.E.2d at 62 ("[A] trial court may, without being specifically obligated to

do so, consider any of the factors delineated in Tech-Bilt, or examine whether the settlement was

collusive as required by the second approach if such inquiry is warranted by the facts of the

individual case. However, mandating that the court perform the foregoing functions in every case

would indisputably be disruptive of, and discouraging to, settlement.").

The Court is persuaded that Oklahoma courts would adopt the "totality of the circumstances"

test in determining good faith under § 832(H)(2). This approach appears to be the favored

interpretation of the UCATA and, in this Court's view, provides the maximum flexibility for fact-

specific "good faith" determinations. The Court has reviewed the few decisions of Oklahoma courts

addressing good faith under § 832(H) and finds that the totality of the circumstances test is in

keeping with those decisions. See, e.g., Dutsch v. Sea Ray Boats, Inc., 845 P.2d 187 (Okla. 1992)

(holding that settlement was in good faith where non-settling party "presented no evidence to

support its bald assertion of bad faith and collusion"). Accordingly, the Court will consider the

"totality of the circumstances" in determining whether the settlement between plaintiff and Supreme

was made in good faith.

The Court must also address the applicable burden of proof. Supreme bears the initial

burden of showing good faith which, at a minimum, requires that they prove the existence of a

legally valid settlement agreement, including proof of consideration given and received. Johnson,

784 N.E.2d at 819. Once the settling parties establish this prima facie evidence of validity, there is

a presumption that the settlement is made in good faith. Id. The burden then shifts to an opposing

party to establish that, under the totality of the circumstances, the settlement was not made in good

6

faith. Id.;  Barmat v. John and Jane Doe Partners A-D, 797 P.2d 1223, 1227 (Ariz. Ct. App. 1990) ("Once the settling party introduces proof of the settlement and the amount thereof, the burden shifts to the party challenging the settlement to 'show that the amount paid by the claimant in settlement was not paid in good faith.'").  Courts disagree as to the standard of proof the non-settling parties must meet to show absence of good faith; some have required them to show the absence of good faith by clear and convincing evidence and others by a preponderance of the evidence. Compare Johnson, 784 N.E.2d at 819-21 (preponderance standard), with Dacotah, 21 F.Supp.2d at 578 n.21 (clear and convincing standard). In this case, the Court finds it does not have to reach this issue because no non-settling party has challenged the settlement.

Supreme has presented evidence of the existence of a legally valid settlement agreement, including proof of consideration given and received.  Thus, Supreme has established prima facie evidence of validity and there is a presumption that the settlement is made in good faith.  Johnson, 784 N.E.2d at 819.  No party has presented any evidence to rebut this presumption.  Given the totality of the circumstances, the amount of the settlement between Southcrest and Supreme does not suggest an absence of good faith.  There are no allegations of collusion, fraud, or other tortious or wrongful conduct that could support a finding that the settlement was not in good faith.

Because the settlement between Southcrest and Supreme was reached in good faith, Supreme is entitled to protection against contribution and indemnification claims from any alleged joint tortfeasor pursuant to OKLA. STAT. tit. 12, § 832(H).

**IT IS THEREFORE ORDERED** that the  Motion for Finding of Good Faith Settlement (Dkt. # 473) is **granted**.  Supreme will not be subject to any contribution or indemnification claims by an alleged joint tortfeasor.

**DATED** this 6th day of August, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE